Sullivan
No. 86-299

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM P. HEATH

December 31, 1986

*Stephen E. Merrill*, attorney general (*Barbara R. Keshen*, assistant attorney general, on the brief and orally), for the State.

*Bell, Falk & Norton P.A.*, of Keene (*Theodore H. Parent* on the brief and orally), for the defendant.

*Runyon and Sweeney P.A.*, of Peterborough (*Walter H. Sweeney* on the brief and orally), for Robert M. Grovenstein, as *amicus curiae.*

SOUTER, J.   This is an interlocutory appeal under Supreme Court Rule 8, although the case comes to us as a transfer by the Superior Court (*DiClerico*, J.) of four questions prompted by statutory enactments affecting the right of a criminal defendant to depose a young victim or witness. *See* RSA 517:13 (Supp. 1986) and :13-a (Supp. 1986). The questions and our answers will be understood best in light of the relevant facts and statutory history.

The defendant stands indicted on one count of aggravated felonious sexual assault, RSA 632-A:2, XI, charging him with committing acts of fellatio upon a seven-year-old boy in August, 1984. Between the date of the acts alleged and the date of the indictment handed down on January 15, 1986, the legislature passed Senate Bill 2, as introduced in the legislative session of 1985. *See* Laws 1985, ch. 228.

The Senate Select Committee on Child Abuse proposed the enactment of Senate Bill 2, and the Judicial Council supported it. *See* REPORT OF THE SENATE SELECT COMMITTEE ON CHILD ABUSE submitted to Senate President Vesta Roy, March 5, 1985; REPORT OF THE JUDICIAL COUNCIL ON CHILD VICTIMS OF SEXUAL ABUSE[,] February, 1985. Each report endorsed Senate Bill 2 as a response to the reluctance of some young victims and witnesses to testify in an open public courtroom, and to the perceived abuses of the existing discovery deposition process, which is normally unsupervised by judges and never observed by juries.

So far as it concerns us here, Senate Bill 2 was a proposal to modify the existing law by restricting a defendant's statutory right to take discovery depositions in cases involving young victims, and by providing in certain cases for the use of videotaped depositions of young victims and other witnesses. The legislature's specific enactments, *see* Laws 1985, 228:1 and :2, added the final sentence of RSA 517:13 (Supp. 1986) and a new section, RSA 517:13-a (Supp. 1986):

> "517:13   *Taking of Depositions.*   The respondent in a criminal case may take the discovery deposition of any person in his defense, upon giving the same notice of the caption thereof to the prosecutor that is required to be given to the adverse party in a civil case. Any discovery deposition so taken may be used on the trial of the case whenever, in the discretion of the court, the use thereof shall be deemed necessary for the promotion of justice.

Notwithstanding this section, no party in a criminal case in which the victim, at the time of the alleged offense, was under 16 years of age shall take the discovery deposition of the victim or any witness who was under 16 years of age at the time of the alleged offense."

(Laws 1985, 228:1 does not follow the text quoted here from RSA 517:13 (Supp. 1986). The latter printing follows the text of Senate Bill 2 as enrolled and is therefore the correct version.)

"517:13-a   *Video Tape Deposition Authorized.*

I. In any criminal case, any party may move to take a video tape deposition of any witness, including the victim, who was 16 years of age or under at the time of the alleged offense. Any victim who was 16 years of age or under may also move to take a video tape deposition of his testimony. The court shall grant an order authorizing a video tape deposition if it finds by a preponderance of the evidence that:

(a) The child will suffer emotional or mental strain if required to testify in open court; or

(b) Further delay will impair the child's ability to recall and relate the facts of the alleged offense.

II. In any criminal case, if a witness is under 13 years of age, a video tape deposition shall be taken unless the court finds, after a hearing, by the preponderance of the evidence, that it is in the interest of justice to allow testimony in open court.

III. A video tape deposition taken pursuant to this section shall be conducted before the judge or court appointed master, at such a place as ordered by the court, in the presence of the prosecutors, the defendant and his attorneys, and such other persons as the court allows. Examination and cross-examination of the child shall proceed in the same manner as permitted at trial. Such deposition shall be admissible into evidence at trial in lieu of any other testimony by the child.

IV. Unless otherwise ordered by the court for good cause shown, no victim or witness whose deposition is taken pursuant to this section shall be required to appear or testify at trial.

V. Any witness who is 16 years of age or under shall be allowed to have his parent or other appropriate adult present during his testimony.

VI. The supreme court shall make any rules necessary to implement the provisions of this section."

After his indictment, the defendant filed motions for two discovery orders, which would have required the victim to submit to an interview and to give a discovery deposition. The trial court denied each motion, expressly relying on RSA 517:13 (Supp. 1986) in refusing to order the deposition.

The record before us indicates nothing further about actual or potential discovery in this case, except the availability of a videotape of the victim's statement to an investigator employed by the division of welfare. In the course of that statement, the victim responded to certain questions about the events alleged in the instant indictment by giving answers suggesting that one Elmer Sweeney had sexually assaulted him. Sweeney had earlier pleaded guilty to two Grafton County indictments charging him with acts of fellatio committed upon this same victim in October, 1984.

After denying the defendant's discovery motions, the trial court transferred the four questions that we now set out, together with summaries of our responses, which we will develop in greater detail below.

"1. Is [the amendment to] RSA 517:13 [, effective on January 1, 1986,] an absolute bar to discovery depositions of witnesses in criminal cases who are under the age of 16?"

This first question is not subject to a simple yes or no answer. An examination of the terms of RSA 517:13 (Supp. 1986) reveals that the statute as amended limits the use of discovery depositions in criminal cases only when the victim was under sixteen at the time of the offense alleged. In such a case, it forbids separate discovery depositions of the victim or of any witness who was likewise under sixteen at the time. Section 13 must, however, be read together with its newly enacted companion section, RSA 517:13-a (Supp. 1986), which authorizes a trial court to order videotaped depositions of such victims or witnesses. Such depositions may include questions posed for discovery purposes, calling for answers that might not be admissible at trial.

"2. If the answer to the first question is in the negative, what standards shall the trial court apply in deciding whether or not to permit such depositions?"

Given our first answer, we interpret this question to ask about the significance of potential discovery when a court is considering a

request for a videotaped deposition or an objection to a discovery question posed in the course of such a deposition. We answer that a defendant's bona fide desire to pose discovery questions is a proper ground for ordering such a deposition or allowing a discovery question.

"3. If the answer to the first question is in the affirmative, is the statute unconstitutional in that it acts in this case to deny defendant . . . his rights to properly prepare a defense, to have the adequate assistance of counsel, to have the benefit of due process of law, to have the right of equal protection under the law, to have a fair trial, and to confront the witnesses against him?"

When discovery questions are permitted in the course of a videotaped deposition authorized by RSA 517:13-a (Supp. 1986), this question will not arise. When they are not, however unlikely that may be, there will not automatically, and without more, be a violation of either State or national standards of due process and equal protection. The record of the preliminary stages of the case now before us does not give rise to the other constitutional issues mentioned in the third question, and we intimate nothing about our likely responses if and when those issues are presented to us.

"4. Does [the amendment of] RSA 517:13 . . . apply to the case at bar, where the incident alleged occurred prior to the effective date of the statute?"

Both the amendment of RSA 517:13 (Supp. 1986) and the newly enacted RSA 517:13-a (Supp. 1986) are applicable to the case before us.

The considerations that prompt our answers begin with an analysis of the new statutes and their legislative history. Although the first question asks whether RSA 517:13 (Supp. 1986) is a "bar to discovery depositions of witnesses in criminal cases who are under the age of 16," we have already indicated that our response to the question must rest on RSA 517:13-a (Supp. 1986), as well as on RSA 517:13 (Supp. 1986).

We start with a word about the meaning of "discovery deposition." While the statute does not define the phrase, in common usage it refers to a pretrial deposition taken without the presence of a judge, at which permissible questions are not limited by the rules of evidence, but may include any enquiry calling for "testimony . . . reasonably calculated to lead to the discovery of admissible evidence and [not violative of] any privilege." SUPER. CT. R. 44.

RSA 517:13 (Supp. 1986) does not bar such a deposition merely because the witness sought to be deposed is "under the age of 16," since the statutory prohibition applies only in cases in which the victim was under sixteen at the time of the alleged offense. In these cases the new final sentence of the section bars such depositions of the victim and of any witness who was also under sixteen at the time of the offense alleged.

This absolute prohibition is mitigated, however, by the new companion statutory section, RSA 517:13-a (Supp. 1986). This authorizes the trial court to order videotaped depositions under court supervision for use in lieu of trial testimony, RSA 517:13-a, III (Supp. 1986), of any victim or any witness who was under sixteen at the date of the alleged offense. RSA 517:13-a, I (Supp. 1986). The statute then goes further to require such an order in three situations: when the court finds that "[t]he child [victim or witness] will suffer emotional or mental strain if required to testify in open court," RSA 517:13-a, I(a) (Supp. 1986); when the court finds that "[f]urther delay will impair the child's ability to recall and relate the facts of the alleged offense," RSA 517:13-a, I(b) (Supp. 1986); and when a witness "is under 13 years of age," unless the court finds that "it is in the interest of justice to allow [the child's] testimony in open court." RSA 517:13-a, II (Supp. 1986). Since "is under 13 years of age" is not otherwise explained, we assume, without holding, that it refers to the age of the witness at the time of anticipated trial.

Because these provisions authorize or require court supervised videotaped depositions of victims or witnesses who could not be deposed under section 13, trial judges and masters will need to know whether permissible enquiries during such a videotaped deposition may include questions posed solely for otherwise legitimate discovery purposes. In addressing this issue, we cannot overlook the statutory provision for the use of such depositions in lieu of trial testimony, which carries an arguable suggestion that their scope should be limited to questions permissible and answers admissible at trial. Nor do we ignore the possibility of a like suggestion in the provision of subsection III, that "[e]xamination and cross-examination of the child shall proceed in the same manner as permitted at trial."

■ Legislative history indicates, however, that the mandate to follow the "manner" of trial was not intended to preclude discovery questions. To the contrary, the Select Committee's report, signed by the six senators who also sponsored Senate Bill 2, not once but twice explains that the intent to eliminate discovery depositions of young victims and witnesses did not extend to occasions "when such depositions are videotaped for presentation in lieu of testimony . . . ."

REPORT OF THE SENATE SELECT COMMITTEE ON CHILD ABUSE submitted to Senate President Vesta Roy, March 5, 1985, at 6; *see id.* at 8. This position is entirely consistent with the Select Committee's stated objectives of limiting the number of occasions on which young witnesses will be subject to cross-examination, and of providing supervision when pretrial questioning does occur, *id.* at 9. We accordingly infer that the legislature intended to authorize the presiding justice.or master to permit discovery questions in the course of depositions ordered under section 13-a (Supp. 1986). Of course, it may be necessary to eliminate or block out discovery questions and the witness's responses when such a videotape is played before a jury, but this is a common practice whenever a videotaped deposition includes testimony later ruled inadmissible.

■ The possibility of thus using videotaped depositions in part for discovery will have a legitimate bearing on the trial court's exercise of discretion when requested to authorize them under RSA 517:13-a, I (Supp. 1986). Although, as we have noted, the subsection mandates requested depositions in certain instances, depositions are otherwise discretionary in cases to which the subsection applies. In these discretionary instances the court may consider the potential usefulness of discovery as a reason to order a deposition at the behest of the defense or, for that matter, of the State. Just as when it rules on the propriety of a given discovery question, the court generally should judge the request in light of the reasonableness of the possibility that it will lead to admissible evidence. SUPER. CT. R. 44.

■ When discovery questions are allowed in the course of a section 13-a deposition, the constitutional issues underlying the third transferred question will not arise. But there may be cases, however rare, in which the trial court does not order a videotaped deposition or allow discovery questions in the course of one, and there may be occasions, therefore, to consider the constitutional implications of denying deposition discovery of a victim or significant witness. Since we are forced to deal in generalities at this point in the case before us, we will limit our constitutional consideration to deciding whether such a denial would necessarily violate standards of due process or equal protection under the State or National Constitutions. We conclude that it would not.

We begin with a consideration of the due process issue under part I, article 15 of the State Constitution, and look first to the source of the general right to compel depositions in criminal cases. Although our case law has reflected differing views about the nature of a trial

court's power to order depositions, our cases have never suggested that a criminal defendant has a general and unqualified due process right to compel them. The early view that a court's authority to order a deposition is not constitutional in origin may be found in *Taylor v. Thomas*, 77 N.H. 410, 92 A. 740 (1914), where this court observed, with something less than total clarity, that the power was statutory, *id.* at 411, 92 A. at 741. Although the court later recognized an inherent judicial power to order discovery, *State v. Sorrell*, 120 N.H. 472, 475, 416 A.2d 1375, 1377 (1980); *State v. Superior Court*, 106 N.H. 228, 230, 208 A.2d 832, 834 (1965), the power is discretionary in nature, *see id.*, and therefore inconsistent with the notion that a defendant has an unqualified constitutional entitlement to discovery of any specific variety. This judicial discretion is, of course, limited today by the rule in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, mandating the disclosure of exculpatory evidence, and we do not foreclose the possibility that factual and procedural peculiarities of a given case may ground a claim to some particular discovery as an element of fundamental fairness. *See State v. Booton*, 114 N.H. 750, 329 A. 2d 376 (1974).

The State decisions affecting entitlement to discovery have paralleled, if they have not exactly duplicated, the course followed by the Supreme Court of the United States, which has held that "[t]here is no general constitutional right to discovery in a criminal case," *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), and that "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . ." *Wardius v. Oregon*, 412 U.S. 470, 474 (1973); *see United States v. Augenblick*, 393 U.S. 348 (1969) (Jencks Act discovery not constitutionally required as a general rule). Beyond recognizing the sixth amendment obligation to disclose evidence under *Brady* and subsequent cases, the Supreme Court has construed due process to demand only that when compulsory discovery is made available in criminal cases, it must be provided to the defense on the same terms as it is to the government. *Wardius v. Oregon, supra* at 425.

At the most basic level, these State and federal cases reflect the fact that court-ordered discovery does not exhaust the practical possibilities for investigating and preparing a criminal case. This defendant has access, for example, to a statement by the victim that not only anticipates the victim's testimony but provides a basis to attack the reliability of that testimony if the victim offers it. Given such sources of information and evidence, we simply can not say that discovery depositions are necessarily essential to adequate trial preparation, and it is enough for purposes of due process to recog-

nize that specific procedural and factual features of a given case may prompt a claim to discovery on due process grounds. *See State v. Booton supra; see also Weatherford v. Bursey supra.*

We deal with the equal protection issue more briefly. The defendant does not press it, and we speak to it only because the court raised it and the amicus curiae addressed it. The claim is that the application of RSA 517:13 (Supp. 1986) creates an impermissible classification by limiting the deposition discovery rights of defendants accused of crimes against victims under sixteen.

No one argues a need for strict scrutiny in testing the validity of this classification, although the amicus curiae suggests that the appropriate standard may be the middle-tier test of heightened scrutiny. *See Carson v. Maurer,* 120 N.H. 925, 931–32, 424 A.2d 825, 830–31 (1980). This, however, is clearly not so. The defendant's interests are not substantive rights for purposes of State middle-level scrutiny, *see id.,* and the distinction in question does not rest on gender or legitimacy so as to entitle the defendant to heightened scrutiny under the federal standard. *See City of Cleburne v. Cleburne Living Center, Inc.,* 105 S. Ct. 3249, 3255 (1985); *but see id.* at 3260 (Stevens, J., concurring).

█ It follows that under both State and federal standards the classification must be judged by asking whether it bears a rational relationship to the effectuation of a legitimate State interest, *see State v. Deflorio,* 128 N.H. 309, 512 A.2d 1133 (1986); *City of Cleburne v. Cleburne Living Center, Inc. supra,* and there is no serious question that the classification passes muster under this test. As the preceding discussion has suggested already, the legislature could reasonably have found that repetitive subjection to interrogation without judicial supervision is so disturbing to young victims and witnesses as to threaten effective prosecution of the cases in question.

█ On the issue raised by the fourth question transferred, the defendant submits that the amendment to RSA 517:13 (Supp. 1986) may not be applied to his case because it was enacted after the date of the offense alleged. He argues that application of the new law here would offend both part I, article 23 of the State Constitution and section 10 of article I of the Constitution of the United States, each prohibiting the application of ex post facto laws. *See State v. Ballou,* 125 N.H. 304, 481 A.2d 260 (1984) (Souter, J., dissenting in part). The want of merit in this argument appears, however, as soon as we turn to the accepted enumeration of features that identify prohibited ex post facto laws:

"[E]very law, which makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; or which aggravates a crime, and makes it greater, than it was when committed; or which changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed; or which alters the legal rules of evidence, and receives less or different testimony, than the law required at the time of the commission of the [offense], in order to convict the offender is an *ex post facto* law."

*Woart v. Winnick*, 3 N.H. 473, 475 (1826) (paraphrasing *Calder v. Bull*, 3 U.S. 386 (1798)). The change in the law of entitlement to depositions does not fall within any of the ex post facto categories, and may be applied now, whether it be regarded as a remedial change, *see State v. Preston*, 119 N.H. 877, 880, 409 A.2d 792, 794 (1979), or as a merely procedural change as to which the reasons for enactment meet the State's burden to justify its immediate application. *See State v. McKenney*, 126 N.H. 184, 489 A.2d 644 (1985).

In sum, our answers to the transferred questions support the trial court's discovery rulings to date. Those rulings should not, however, be construed to limit the defendant's opportunity to propose discovery questions in the course of any videotaped deposition that may later be ordered in this case.

*Affirmed and remanded.*

All concurred.